## ROBERTSON *v.* KENNEDY.

1. TRIAL—INSTRUCTIONS—OPINION AS TO FACTS—CORRECTION.
   Reversal will not be had because the trial court improperly influenced the jury against the defendant by expressing the opinion that a suggested defense had not been strongly urged, where counsel speedily informed the court that his impression was wrong, and the court repeatedly instructed the jury upon the subject and plainly made their conclusion thereon a turning point in the case.

2. TROVER — CHATTEL MORTGAGES — CONVERSION — DEMAND — REFUSAL—EVIDENCE—SUFFICIENCY.
   In an action of trover for the conversion of household goods upon which plaintiff held a chattel mortgage, evidence examined, and *held*, sufficient to go to the jury upon the theory

that an unqualified demand was made, that it was based upon the chattel mortgage, and that defendant's representatives refused to respect it.

3. Same — Conversion by Agents — Authority of Agents — Question for Jury.

Whether constables placed in charge of the goods by defendant, who had seized them on a chattel mortgage lease, exceeded their authority in refusing to deliver the goods on plaintiff's demand, was a question for the jury.

4. Same—Conversation—Evidence—Res Gestæ.

A conversation between plaintiff's agent and the constables acting for defendant at the time of making the demand was admissible as res gestæ.

Error to Wayne; Hosmer, J. Submitted April 10, 1908. (Docket No. 17.) Decided May 1, 1908.

Trover by Frank A. Robertson, administrator of the estate of William Scott, deceased, against Pamelia Kennedy and James D. Kennedy. There was judgment for plaintiff, and defendants bring error. Affirmed.

*A. J. Groesbeck*, for appellants.

*James G. McHenry*, for appellee.

HOOKER, J. Scott, the plaintiff's intestate, held a chattel mortgage given by a Mrs. Van Marter upon some household furniture owned by her. It was seasonably filed. Afterwards Mrs. Van Marter leased certain premises from a Mrs. Kennedy which lease contained the following provision:

"And the said party of the second part does hereby covenant and agree that all goods, wares and merchandise, household furniture, fixtures or other property which are or shall be placed in or on said premises by her shall be liable and this lease shall hereby constitute a lien or mortgage on said property, to secure the rent due or to grow due on this lease. And does hereby authorize and empower the said party of the first part to, and the said party of the first part may, in case any default is made in

the payment of the rent above specified, or any of the covenants herein contained are broken, enter upon said premises, or take any of said mortgaged property wherever the same may be found, and sell and dispose of the same in the same manner as in the case of chattel mortgage on default thereof, giving six days' notice of the time and place of such sale, said notice to be posted in two public places in the said city of Detroit for the best price he can obtain for the same, and retain sufficient money to pay any rent due hereon, or to grow due hereon, together with the costs of such sale; and the said party of the second part hereby waives all benefit of any exemption law of this State in reference to the sale of said personal property for rent. Any property or goods placed in said premises shall not be encumbered in any way if free and clear now, and any property already encumbered shall not be further encumbered without the written consent of the first party."

Mrs. Van Marter allowed her rent to get in arrears, and proceedings were begun before a commissioner to recover the possession of the premises by Mrs. Kennedy, and they resulted in a judgment of ouster on February 3, 1905.

On February 8th, Mr. Kennedy, acting for his wife, the lessor, caused possession of the furniture to be taken under the lease by Mr. Guest, a constable acting under the instruction of counsel. Peters, his associate, remained upon the premises for two or more days in control of the furniture. A writ of restitution was issued February 9th.

The plaintiff claims that demand for the possession of the property was made upon defendant's agents, who refused it, and this action of trover, begun before a justice, followed. The trial resulted in a judgment for defendant. A subsequent trial in the circuit court resulted in a verdict and judgment for the plaintiff, and the defendant has appealed.

The learned circuit judge stated in his charge to the jury that their verdict should depend upon two propositions, *First*, Whether there was a valid existing chattel mortgage upon the property in question, which belonged

to the plaintiff as administrator of William Scott. *Second*, Whether there was any conversion on the part of the defendants prior to the commencement of the suit before the justice. He added the following statement:

"I say, whether there is a valid chattel mortgage because I do not understand that that defense has been strongly urged by the defendants here, but still it exists in the case, because the plaintiff must prove to your satisfaction, first, that there was a valid existing mortgage upon the property, and, secondly, that there was a conversion of that property.

"Now you have heard the testimony in the case—the testimony on behalf of Mrs. Van Marter, viz., that the mortgage in question in this case was executed by her on account of a consideration which she had received from Mr. Jenks, and that no portion of it has been paid. And you have heard the testimony, gentlemen of the jury, of the defense in this case, that at various times she stated that there was no lien upon the property, except upon the property as I understand it, which was in the house when she came there, and which she had purchased on her going into the house. Now, under this testimony, I think it is for you to say whether there was anything due upon the mortgage in question and if so, how much."

Defendant's counsel alleges error upon the statement quoted "because I do not understand that that defense has been strongly urged." The judge further charged the jury substantially that Mrs. Van Marter had testified that plaintiff's mortgage was a valid existing mortgage, but that there was testimony that she had made statements to the contrary, and it was therefore a question for the jury to decide. If it was not such a mortgage, the plaintiff was not entitled to their verdict, but if they found it to be such, and that nothing had been paid upon it, plaintiff was entitled to the possession of the property by virtue of the mortgage, and if he made a demand for it, upon the defendants or their agents, and that was tantamount to a conversion, a verdict should be rendered in favor of the plaintiff. He had previously said that the lease gave Mrs. Kennedy and her agents a right, on non-

payment of rent, to take the possession of the property long enough to inventory it, to see what there was there, and, if necessary, to make a sale of the property, subject to existing liens, without being in any sense guilty of a conversion of the property.   He said further ·

"It is for you to say what demand, if any, was made then—because, gentlemen, with those rights which the defendant had, if the refusal of the constable or those in possession of the property, either at that time or afterwards, was not tantamount to a conversion of the property on the part of Dr. Kennedy, then I say to you, gentlemen, this action will not lie.   If it was tantamount to a refusal to respect his rights as chattel mortgagee, then if there be an existing chattel mortgage, there can be no question but what the plaintiff would be entitled to recover such amount as would compensate him for the injury that he has suffered.   It is for you to say.   It is purely a question of fact for the jury.   A constable might have refused an instant delivery of the goods without at the same time being guilty of a conversion of them.   If Mr. Guest or Mr. Peters, who was there, explained the matter that they were keepers of the goods, and they were subject to the orders of Mr. Groesbeck, who was acting as attorney, and that they desired to consult him, then I say to you, gentlemen of the jury, if that was acceded to, as claimed by Mr. Sempliner, obviously, that would not be such a refusal as would support this right of action—if there was an absolute refusal to respect his rights as mortgagee, then, as I said before, the action would lie.

"I am asked to charge you in this case.   There was a valid subsisting chattel mortgage upon the goods that that mortgage had been duly recorded in accordance with the statute in such case made and provided, and was prior in time to the other encumbrance upon the goods; that is, that this mortgage was a good first mortgage, and this being so, the mortgage was a lien upon the household goods, and was a sufficient property right in the goods to sustain this action of trover, provided the other elements necessary to sustain trover were present.   Well, as I said before, gentlemen of the jury, you have heard the testimony of the witness respecting the giving of the chattel mortgage.   If you believe her testimony that it was then a valid subsisting chattel mortgage, unquestionably that

is true—if you believe her statement—if you believe that she made statements to the contrary to the agents of Mrs. Kennedy, then you may consider that as bearing upon the question whether it was or was not a valid subsisting chattel mortgage."

Counsel urge that the judgment should be reversed for the reason that the court improperly influenced the jury against the defendant, by expressing the opinion that the invalidity of the chattel mortgage had not been strongly urged. The jury must have become convinced that it was strongly urged, for counsel speedily informed the court that his impression was wrong, and the court repeatedly instructed the jury upon the subject and plainly made their conclusion upon the subject a turning point in the case. The judgment should not be reversed on this ground.

Counsel asked the court to direct a verdict for the defendant. They argue:

(a) That a sufficient demand was not made.

(b) That the refusal if any was not such as to justify a claim of conversion.

(c) The refusal if any was not within the authority of the agent who made it.

The proof offered contained the following: Mr. Van Marter testified:

"Our household goods were held by the constable, whose name was Peters. Mr. Guest had been there several times. Sometimes he was there 15 or 20 minutes, sometimes he was there for an hour. Mr. Guest was there probably in the neighborhood of three or four hours. Mr. Peters was there for two days and a half. He stayed all night and did not leave the premises after he came in once. He was there at least two nights. He was there more than that, because he was there until we left. He sat around guarding the house, I guess, so that it would not run away, as near as I could find out. He would not let any of the household goods go out without a writ of replevin, that is what he told me. When I was there some one came after the furniture. You came after it and made a demand for the furniture. I don't remember

just what words Mr. Peters used in answering you, but he gave me to understand that we could not have any of the furniture that was in the house. You made a demand for the goods covered by the chattel mortgage. Either Mr. Guest or Mr. Peters exhibited a paper while they were there, and that paper was the authority to come in and have charge of all the furniture and household goods that was in the house. * * *

"When the demand was made for the goods under the first mortgage, he said—I don't remember just what he said, but he gave us to understand that he would use some force if it was necessary. Mr. McHenry made a demand for the goods. He had a list of them and called them off. He made the demand of the constable, Mr. Peters. He said: 'I make a demand for these household goods,' and he read them off, and I don't remember in whose name he demanded them but I remember of him demanding them and reading them off. * * *

"I will not swear he made it in Mr. Robertson's name, nor in Mr. Scott's name. I will not swear that he did not make the demand in the name of my mother. I will not swear that he made the demand in the name of anybody."

Mr. Sterling testified:

"While I was there Mr. McHenry and another gentleman came up and made a demand. Mr. Peters refused to allow the furniture to be taken away. He claimed the furniture under some kind of a lease or mortgage. I don't remember. I believe Exhibit 4 was the paper. To the best of my recollection it was. Mr. Peters said that they would have to take it over his dead body if they took the furniture away from there; that he was there to protect the furniture and keep it there and that he was going to keep it there. I told him I was simply there to keep the peace and I did not have anything to do with the furniture. Mr. Peters claimed he was there in the interests of Mr. Kennedy and Mr. McHenry. I think it was in the name of Mr. Robertson. I think Mr. McHenry made a demand in the name of Mr. Robertson."

Sterling was a police officer sent there by his superior to preserve the peace. On cross-examination he said:

"Mr. McHenry showed me the paper when I was at the door that time. It was a paper that he had. I believe it is a mortgage. I did not pay much attention to

it. I simply glanced it over. To the best of my recollection he showed me the mortgage that contained the name of Robertson. I would not be positive as to that. I would not swear to that only he claimed he had a mortgage. I wouldn't swear that the paper contained the name of Robertson. I don't remember what the name was. I glanced it over. I could not say whether the name in the paper was that of Mr. Scott. I heard the name of Robertson mentioned in the justice court, and I have heard it here because Mr. Robertson is the plaintiff here. I think that was the name used. I think Mr. McHenry mentioned his name that time. I don't think he mentioned Mr. Scott's name. I think it was Robertson. When the paper was shown to me, I looked through it and saw Mrs. Van Marter's name on it, and that it was a mortgage, and that was all."

Mr. Johnson said:

"I went to 426 Cass avenue with Mr. McHenry. Mr. McHenry made a demand for the goods and Mr. Peters refused to deliver them.

"Q. In whose behalf was that demand made by him?

"A. I don't know who you were representing. Mr. McHenry did not state to me whom he was representing. I don't recall what he said to the man upon whom he made the demand. He stated to the man upon whom he made the demand who he was representing."

Mr. McHenry testified:

"I made a demand on Mr. Guest for those goods and he said that he would not give them to me, that he was holding them under a lease. I asked Mr. Peters what he was doing there. I had quite a little trouble with both of them. Mr. Peters said that Mr. Guest took possession of these goods and he said that he would not give them to me; that when he was put there to do a job he was going to hold them and nobody was going to take the stuff away. I went up again and he would not let me have possession of them. I went up there on the 9th and Mr. Peters was there alone. Mr. C. H. Johnson was there with me for a witness. We went to the police department and asked them to send a man there to keep the peace. I had been asked to go there and take the goods and I thought there would be trouble in the way of wanting to take the goods away, because I meant at that time to take the goods by

force. Mr. Sterling advised me to keep the peace. He said he would arrest both Mr. Peters and myself if we had a fight there. I tried hard to get the goods and went to take hold of one of the pieces myself and put it outdoors, and Mr. Peters would not let me, and if I got it, he said I would have to take it over his dead body. I left him in possession of the goods and went away. I made a demand on the 8th of Mr. Guest, the first time that I went there. I made a demand in the name of Frank A. Robertson, administrator of the estate of William Scott, deceased, George J. Jenks, and of other parties in interest. Those were the exact words I used, and I made this demand under the mortgage. I am sure I made the demand in the name of Mr. Robertson. I saw Mr. Lamb there. He is the agent of Dr. Kennedy. Dr. Kennedy told me that Mr. Lamb was his agent. Mr. Lamb said that if I took anything he would have the woman arrested. I took the lease and I went over and saw Justice Sellers, and I asked Justice Sellers whether on that showing he would issue a warrant for this woman. I did not want to get the woman arrested, and he said he would not. Dr. Kennedy and Mr. Lamb both told me that if that woman touched the goods they would have her arrested. I don't remember having any talk with Dr. Kennedy and Mr. Lamb as to the constables' taking possession of this furniture, but it was all understood between us that the constables were the agents of and were sent there by Mr. Groesbeck and Dr. Kennedy and had the stuff in charge. I tried two or three times to get a settlement with Mr. Groesbeck. I told him that if he would let us have the stuff I would not appeal. I saw the notice of sale. I don't just remember distinctly when that was. We read the paper which was there. I did not know that it was subject to claims until after that. I supposed it was in opposition to our mortgage. I don't remember whether they disputed our right as to our title under claim of mortgage other than to make a foreclosure themselves. The point we were after was the goods. Mr. Sempliner was there also. He, of course, I knew was associated with Mr. Groesbeck's office and I talked with him in reference to the goods and I don't remember distinctly what our conversation was, but the effect of it was that I could not have them. I would like to state also that when I made this demand on Mr. Peters I made him show the paper. Mr. Guest had turned over this

lease to him the second day and had gone away and left him in charge with the papers.  Mr. Peters showed me this lease as his authority."

There is enough in the testimony quoted to warrant a conclusion that an unqualified demand was made, and that it was based upon a chattel mortgage, and that the defendants' representatives refused to respect it, although this testimony was disputed.

The claim of immunity, upon the ground that defendants' agents exceeded their authority, cannot be sustained. These questions were all submitted to the jury, which is all that defendants were entitled to.

Error is assigned upon the admission of the conversation between McHenry and Guest and Peters.  Counsel has omitted to state where the testimony is to be found in the record, but we infer that it related to what occurred between them at the time McHenry made a demand. This was a part of the res gestæ and clearly admissible.

We find nothing in the record that defendants have reason to complain of.  The trial was fair and the charge clear and just, and we detect nothing indicating a miscarriage of justice, or occasion for a new trial.

The judgment is affirmed.

BLAIR, MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred.